*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

GREAT LAKES WATER AUTHORITY,

        Plaintiff-Appellee,

v

MIDWEST MEMORIAL GROUP, LLC,

        Defendant-Appellant,

and

CITY OF DETROIT, WAYNE COUNTY, CONGREGATION BETH EL, AMERICAN MOSLEM SOCIETY, A-1 CARPET CLEANING CO, WELLS FARGO BANK N.A., DETROIT SALT COMPANY, WILLIAM R. ELDRIDGE, DTE ELECTRIC COMPANY, DETROIT UNITED RAILWAY, CSX TRANSPORTATION, INC., MARY WHITMAN OR HER UNKNOWN HEIRS, DEVISEES, LEGATEES, AND ASSIGNS, MARY BERGER OR HER UNKNOWN HEIRS, DEVISEES, LEGATEES, AND ASSIGNS, JOHN BESTE OR HIS UNKNOWN HEIRS, DEVISEES, LEGATEES, AND ASSIGNS, CAROLINE SCHWEITZER OR HER UNKNOWN HEIRS, DEVISEES, LEGATEES, AND ASSIGNS, HENRY J. KINNUCAN OR HIS UNKNOWN HEIRS, DEVISEES, LEGATEES, AND ASSIGNS, WILLIAM H. MURPHY OR HIS UNKNOWN HEIRS, DEVISEES, LEGATEES, AND ASSIGNS, SYLVESTER MARION OR HIS UNKNOWN HEIRS, DEVISEES, LEGATEES, AND ASSIGNS, ADOLPH N. MARION OR HIS UNKNOWN HEIRS, DEVISEES, LEGATEES, AND ASSIGNS, ALEXIS CAMPAU OR HIS UNKNOWN HEIRS, DEVISEES, LEGATEES, AND ASSIGNS, ADOLPH W. MARION OR HIS UNKNOWN

UNPUBLISHED
January 18, 2024

No. 362172
Wayne Circuit Court
LC No. 22-004309-CC

-1-

HEIRS, DEVISEES, LEGATEES, AND ASSIGNS,
CRESENZ FLAMMER OR HIS UNKNOWN
HEIRS, DEVISEES, LEGATEES, AND ASSIGNS,
GEORGE FLAMMER OR HIS UNKNOWN
HEIRS, DEVISEES, LEGATEES, AND ASSIGNS,
EMIL J. HANDLOSER OR HIS UNKNOWN
HEIRS, DEVISEES, LEGATEES, AND ASSIGNS,
GERTRUDE HANDLOSER OR HIS UNKNOWN
HEIRS, DEVISEES, LEGATEES, AND ASSIGNS,
EDNA J. CHRIST OR HER UNKNOWN HEIRS,
DEVISEES, LEGATEES, AND ASSIGNS, BABY
JAMES OR HIS UNKNOWN HEIRS, DEVISEES,
LEGATEES, AND ASSIGNS, WILLIAM STEERS
OR HIS UNKNOWN HEIRS, DEVISEES,
LEGATEES, AND ASSIGNS, SARAH ANN
STEERS OR HER UNKNOWN HEIRS,
DEVISEES, LEGATEES, AND ASSIGNS, JOHN
BURBANK, JR., OR HIS UNKNOWN HEIRS,
DEVISEES, LEGATEES, AND ASSIGNS, D.
HOLBROOK OR HIS UNKNOWN HEIRS,
DEVISEES, LEGATEES, AND ASSIGNS,
ANTHONY BESTE OR HIS UNKNOWN HEIRS,
DEVISEES, LEGATEES, AND ASSIGNS, JOHN
BITTORF OR HIS UNKNOWN HEIRS,
DEVISEES, LEGATEES, AND ASSIGNS, JEAN
BAPTISTE RIAPELLE OR HIS UNKNOWN
HEIRS, DEVISEES, LEGATEES, AND ASSIGNS,
and ANTOINE CHIQUIERE OR HIS UNKNOWN
HEIRS, DEVISEES, LEGATEES, AND ASSIGNS,

Defendants.

Before: GLEICHER, P.J., and BORRELLO and SHAPIRO, JJ.

PER CURIAM.

In this condemnation action, defendant Midwest Memorial Group, LLC (defendant), appeals as on leave granted the trial court's order denying defendant's motion to review necessity. For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

Defendant is the owner and operator of Woodmere Cemetery (the cemetery). In 2004, the Detroit Water and Sewerage Department (DWSD), began constructing several combined sewer overflow facilities, including the Baby Creek Screening and Disinfection Facility (the Baby Creek SDF), which is located north of the cemetery. As part of this project, the DWSD obtained an easement through a consent judgment to allow for expansion of the existing sewer conduit under

the cemetery. The existing sewer became the Baby Creek Outfall, connecting the Baby Creek SDF with the Rouge River located south of the cemetery. The outfall sewer primarily runs through the cemetery, near the cemetery's west boundary line.

Plaintiff Great Lakes Water Authority (GLWA) is the current operator of the Baby Creek SDF and the Baby Creek Outfall. In 2022, GLWA initiated this action seeking a permanent easement to construct additional facilities at the cemetery's southwest corner necessary to maintain the outfall sewer. Specifically, GLWA sought to remove accumulated sediment and debris, or "sludge," from the sewer line. GLWA's plans did not involve the construction of any structures. Rather, the additional facilities included construction of a concrete crane pad, a driveway, and a staging area. The project would utilize the existing access sites in front of a sampling building that were constructed as part of the 2004 easement, as depicted in this 3-D model:



Debris removed from the sewer would be placed in perforated baskets inside dumpsters to allow for drainage. There would also be trucks on site to transport the dumpsters to a disposal facility once the drainage process was complete. According to GLWA's director of wastewater engineering, the initial operations to remove sediment from the outfall were expected to last approximately two years, with operations pausing during funerals. Once the initial sediment removal was completed, GLWA anticipated that sediment removal would not be required for 7 to 10 years.

Defendant moved for review of necessity, arguing that GLWA's determination of necessity was based on an error of law. Defendant argued that the city of Detroit's zoning ordinance prohibited a "sludge removal facility"[1] from being located in the R-2 zoning district that applied to the project location. Defendant asserted that the facility would constitute "waste-related use" that would only be permissible in an industrial zone. Further, defendant argued that GLWA was not exempt from local zoning ordinances under the municipal sewage and water supply systems act (MSWSSA), MCL 124.281 *et seq*. Defendant also argued that GLWA's decision to place the project in a cemetery constituted an abuse of discretion because the project would produce objectionable "smells, sights, and sounds" that were incompatible with the peace and quiet

---

[1] The phrase "sludge removal facility" is not found in the record, but rather is a characterization made by defendant, but there are record materials referring to the sediment and debris as "sludge" or "sludge build-up." In any event, we will generally refer to "the project" consistent with the statutory language in MCL 124.284(2)(e).

associated with cemeteries. Defendant's argument highlighted 39 gravesites in the extreme southwest corner of the cemetery that would be isolated by the project and most acutely affected by it.

In response, GLWA argued that no error of law had occurred regarding the zoning ordinance, because (1) the Legislature exempted GLWA's power to determine project locations from local zoning ordinances; (2) even if GLWA was subject to zoning ordinances, the use proposed by the easement was permitted by the Detroit zoning ordinance; and (3) if the use was not permitted, GLWA could obtain the necessary approval (e.g., a use variance) after it condemned the easement. GLWA also argued that its determination of necessity was not an abuse of discretion. GLWA summarized the report conducted by AECOM, an infrastructure consulting firm, that analyzed possible alternative sites and concluded that the cemetery's southwest corner was the best available option. GLWA asserted that the other sites had "significant drawbacks," including lengthy road closures, the need to construct new access structures, and inefficiencies, such as being farther away from where the sediment needed to be removed. Moreover, all the alternative sites were either adjacent, within, or in close proximity to the cemetery, and therefore, to some extent, the cemetery would be subject to the adverse effects of the project regardless of which site was chosen. In a reply brief, defendant argued, in relevant part, that GLWA would not be able to obtain a use variance for the project.

After hearing oral argument, the trial court denied defendant's motion to review necessity. The trial court first determined that the cemetery was a "reasonable site," even if it was "not the only site[.]" The trial court then concluded that GLWA was not subject to zoning laws under its enacting statute, and therefore the necessity determination was not based on an error of law. Defendant sought leave to appeal, which we initially denied for lack of merit in the grounds presented.[2] In lieu of granting defendant's application for leave to appeal, the Supreme Court remanded this case to us for consideration as on leave granted.[3]

## II. ANALYSIS

## A. ERROR OF LAW

Defendant first argues that GLWA's determination of public necessity is based on an error law because GLWA is not immune from local zoning ordinances, and the proposed project is not allowed by the residential zoning district applicable to the relevant part of the cemetery. While we agree with defendant that GLWA is not immune from local regulation, we nonetheless conclude that the project is allowable under the Detroit zoning ordinance as a "basic utility."[4]

---

[2] *Great Lakes Water Auth v Midwest Mem Group, LLC*, unpublished order of the Court of Appeals, issued September 1, 2022 (Docket No. 362172).

[3] *Great Lakes Water Auth v Midwest Mem Group, LLC*, ___ Mich ___; 986 NW2d 404 (2023).

[4] A public agency's necessity determination is binding on a court in the absence of fraud, error of law, or abuse of discretion. MCL 213.56(2). An abuse of discretion occurs when the outcome

-4-

> The Uniform Condemnation Procedures Act (UCPA), MCL 213.51a *et seq.*, " 'provides standards for the acquisition of property by an agency, the conduct of condemnation actions, and the determination of just compensation.' " *Wayne Co v Britton Trust*, 454 Mich 608, 621-622; 563 NW2d 674 (1997), quoting MCL 213.52(1). "It is required pursuant to MCL 213.56 that there be a public necessity for the taking to be permitted." *Novi v Robert Adell Children's Funded Trust*, 473 Mich 242, 252; 701 NW2d 144 (2005). MCL 213.56 "allows the owner of the property to be taken 'to challenge the necessity of acquisition of all or part of the property for the purposes stated in the complaint' by filing a motion asking that the necessity be reviewed." *Id.* at 248, quoting MCL 213.56(1). [*Consumers Energy Co v Storm*, 509 Mich 195, 198; 983 NW2d 397 (2022).]

"With respect to an acquisition by a public agency, the determination of public necessity by that agency is binding on the court in the absence of a showing of fraud, error of law, or abuse of discretion." MCL 213.56(2). "[T]he party opposing condemnation bears the burden of proving fraud, error of law, or abuse of discretion by the condemning authority." *Wayne Co v Hathcock*, 471 Mich 445, 466; 684 NW2d 765 (2004).

## 1. SCOPE OF REVIEW

As an initial matter, GLWA argues that a zoning challenge is not justiciable in condemnation proceedings. GLWA relies primarily on *Novi*, 473 Mich at 252, for the proposition that when courts review necessity, an error of law exists only when a condemning agency lacks the legal authority to acquire the property. However, we rejected that precise argument in *Dep't of Transp v Riverview-Trenton R Co*, 332 Mich App 574, 592-593; 958 NW2d 246 (2020), explaining that the only claimed legal error in *Novi* was a lack of authority to condemn, and that the *Novi* "does not purport to set the scope of what may or may not amount to an error of law under MCL 213.56(2)."[5] *Id.* at 592-593. We went on to state that if a legal challenge would invalidate

---

falls outside the range of principled outcomes. *Novi v Robert Adell Children's Funded Trust*, 473 Mich 242, 254; 701 NW2d 144 (2005). The trial court's factual findings are reviewed for clear error, but its legal conclusions are reviewed de novo. *Id.* at 249. Whether a governmental entity is subject to local zoning ordinances is a question of law reviewed de novo. *Burt Twp v Dep't of Natural Resources*, 459 Mich 659, 663-664; 593 NW2d 534 (1999). This issue involves a question of statutory interpretation, which is also reviewed de novo. *Ronan v Mich Pub Sch Employee Retirement Sys*, 245 Mich App 645, 648; 629 NW2d 429 (2001). "The goal when interpreting statutes is to discern the Legislature's intent, the most reliable indicator of which is the statute's language." *Dep't of Transp v Outfront Media, LLC*, __ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 357533); slip op at 4.

[5] We also reasoned that MCL 213.56(6) allows for two types of challenges on appeal because it describes two types of orders that may be appealed: "an order of the court upholding or determining public necessity *or* upholding the validity of the condemnation proceeding," and that the defendants were essentially alleging that the proceedings were invalid. See *Riverview-Trenton*, 332 Mich App at 593-594 (emphasis by *Riverview-Trenton*).

the project, then it may be raised in a condemnation suit, because if the entire project is invalid, the taking is unnecessary. See *id*. at 611. But if a legal challenge would not render the entire project invalid, we questioned whether it would have relevance to the condemnation suit. See *id*. at 612, 619-620.

In this case, defendant argues that the zoning ordinance precludes the proposed project under *any* circumstances. Specifically, defendant contends that the project does not involve a permissible use under the R-2 zoning district and that GLWA could not obtain a use variance for the project. Accordingly, defendant's zoning challenge, if successful, would render the condemnation project "invalid," i.e., it would prevent the project from moving forward. We therefore conclude that it is relevant to the condemnation proceedings.[6]

GLWA also argues that defendant's zoning challenge is not ripe for review because it has not been raised before the Detroit Board of Zoning Appeals (BZA). GLWA's position that the Detroit BZA must make the initial determination of whether the project violates the Detroit zoning ordinance is inconsistent with our caselaw allowing a private citizen to bring an action to abate a nuisance "arising from the violation of zoning ordinances or otherwise[] when the individuals can show damages of a special character distinct and different from the injury suffered by the public generally." *Towne v Harr*, 185 Mich App 230, 232; 460 NW2d 596 (1990); see also *Ansell v Delta Co Planning Comm*, 332 Mich App 451, 461; 957 NW2d 47 (2020). Use of land or a dwelling, building, or structure in violation of a zoning ordinance is a nuisance per se. MCL 125.3407; *Fraser v Haney*, 509 Mich 18, 26; 983 NW2d 309 (2022). In *Sakorafos v Charter Twp of Lyon*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362192); slip op at 10-11, we recently affirmed denial of a writ of mandamus to compel the township to enforce its zoning ordinance, concluding that "the Township has discretion in the enforcement of its ordinances, and plaintiffs' ability to seek abatement of the nuisance per se created by the alleged zoning violation provides an equitable remedy to achieve enforcement of the ordinance." We also explained that standing to bring a nuisance per se action is different from the "aggrieved party" standard required for a party seeking appellate relief from a decision of a BZA under MCL 125.3605. *Id*. at ___; slip op at 10-11. These holdings confirm that an individual can bring a zoning challenge without a decision from the BZA. Although this case is not a nuisance-abatement action, it is clear that defendant has standing to litigate this issue. Considering that the zoning challenge was potentially

---

[6] GLWA also relies on *Hathcock*, 471 Mich at 445, in which the Supreme Court determined that the defendants' arguments regarding the project's need for permits and regulatory approval were not relevant to whether the project was necessary under the condemnation by state agencies and public corporations act, MCL 213.21 *et seq*. The Court reasoned that the statute in that case did not "require that the condemning authority clear all other statutory and procedural hurdles before commencing condemnation proceedings." *Hathcock*, 471 Mich at 465.

Similarly, GLWA argues that it does not need to obtain zoning approval prior to the proceeding with condemnation. But in *Hathcock*, the defendant was arguing that the plaintiff "must still clear a number of procedural hurdles," *id*., not that those hurdles necessarily could not be cleared. In this case, defendant is definitively arguing that GLWA may not proceed with the project under the zoning ordinance, which materially distinguishes this case from *Hathcock*.

-6-

dispositive of the proposed project, we conclude that it was properly raised in the motion to review necessity.

## 2. IMMUNITY FROM ZONING

The next question is whether GLWA is immune from local zoning ordinances under its enacting statute. As will be discussed, both parties have meritorious arguments on this issue. Ultimately, however, we conclude that GLWA is not immune from local zoning ordinances.

Whether a state or other governmental entity is exempt from local regulation is a recurring issue. The seminal case is *Dearden v Detroit*, 403 Mich 257, 260; 269 NW2d 139 (1978), in which the Archdiocese of Detroit leased a building to the Department of Corrections as a neighborhood rehabilitation center for soon-to-be released inmates. This use of the building did not conform with the applicable zoning classification, and the City denied a request for variance. *Id.* The Supreme Court declined to hold that state agencies have inherent immunity from local regulation. See *id.* at 261-262. Rather, the Court held that "the legislative intent, where it can be discerned, is the test for determining whether a governmental unit is immune from the provisions of local zoning ordinances." *Id.* at 264. In that case, the Court concluded that the statutory language granting the Department "exclusive jurisdiction" over penal institutions, MCL 791.204, was "a clear expression of the Legislature's intent to vest the department with complete jurisdiction over the state's penal institutions[.]" *Dearden*, 403 Mich at 265. The Supreme Court clarified in *Burt Twp v Dep't of Natural Resources*, 459 Mich 659, 663-664; 593 NW2d 534 (1999), that the use of the term "exclusive jurisdiction" in a statute was not necessary to exempt a governmental entity from local regulation, and the Court "decline[d] to require that the Legislature use any particular talismanic words to indicate its intent." *Id.*

The most relevant case in this situation is *Pittsfield Charter Twp v Washtenaw Co*, 468 Mich 702; 664 NW2d 193 (2003). In that case, the township's zoning ordinance prohibited the county from constructing a homeless shelter on county-owned land within the township. *Id.* The Supreme Court held that the county was exempt from complying with the township's ordinance, relying primarily on the county commissioners act (CCA), MCL 46.1 *et seq.*, which provided, in pertinent part, that a county board of commissioners may "[d]etermine the site of, remove, or designate a new site for a county building[,]" but also noted "[t]he exercise of the authority granted by this subdivision is subject to any requirement of law that the building be located at the county seat. See *Pittsfield*, 468 Mich at 705 n 2, quoting MCL 46.11(b).

The Court first noted that the Legislature placed only one requirement on the authority to site buildings, relating to locating buildings at the county seat. *Pittsfield*, 468 Mich at 711. The Court reasoned that "the Legislature, by explicitly turning its attention to limits on the county siting power and deciding on only one limitation, must have considered the issue of limits and intended no other limitation." *Id.* The Court further concluded that if the county's authority to site buildings was subject to local zoning ordinances, MCL 46.11(b) would be mere surplusage, because the county, just like any other land user, already had the authority to site buildings in harmony with the existing zoning plan. *Pittsfield*, 468 Mich at 713-714.

Returning to this case, GLWA does not rely on the broad powers and purposes of the MSWSSA to argue that it is exempt from local zoning. Rather, consistent with *Pittsfield*, GLWA

focuses on specific statutory language regarding its power to determine the location of its projects. MCL 124.284(2)(e) states:

> (2) An authority may do all of the following:
>
> * * *
>
> (e) Determine the location of any project constructed by it under the provisions of this act, and to determine, in its discretion and without reference to any other provisions of this act or any other law, the design, standards, and the materials of construction, and construct, maintain, repair, and operate the project. However, the functions, powers, and duties of the state department of public health and the department of natural resources in connection with any such public improvements shall remain unaffected by this act.

There are three discernable powers in this statutory provision: (1) to determine a project's location; (2) to determine the design, standards, and construction materials for the project; and (3) to construct, maintain, repair, and operate the project.

GLWA argues that its power to "[d]etermine the location of any project constructed by it under the provisions of this act," MCL 124.284(2)(e), is identical to the statutory authority to site county buildings in *Pittsfield*, MCL 46.11(b). It follows, GLWA argues, that the analysis in *Pittsfield* applies with equal force to the present circumstances. Again, *Pittsfield* reasoned that counties, like any other land user, already had the power to site buildings, subject to the local zoning ordinances. So, unless MCL 46.11(b) granted exemption from local regulation, the language providing that counties could determine the site of county building was, in effect, meaningless. *Pittsfield*, 468 Mich at 713-714. GLWA argues that the same reasoning applies to water and sewer authorities formed under the MSWSSA i.e., they inherently have the power to determine project locations, so the statutory language to that effect is meaningless if it does not exempt authorities from local zoning ordinances.

We acknowledge the merit of GLWA's argument, and at first glance, it would seem this case is controlled by *Pittsfield*. However, the MSWSSA must be interpreted according to its own language, *In re Complaint of Rovas*, 482 Mich 90, 93; 754 NW2d 259 (2008), and defendant relies heavily on the statutory language exempting GLWA's design power from other laws, granting GLWA the authority to:

> (e) Determine the location of any project constructed by it under the provisions of this act, and to determine, *in its discretion and without reference to any other provisions of this act or any other law*, the design, standards, and the materials of construction, and construct, maintain, repair, and operate the project. [MCL 124.284(2)(e) (emphasis added).]

Defendant argues that this language shows the Legislature intended to exempt only GLWA's design power from "any other law." Under the last-antecedent rule,[7] the phrase "in its discretion and without reference to any other provisions of this act or any other law" applies only to GLWA's authority to determine the designs, standards, and materials of construction. Relying on the doctrine of *expressio unius est exclusio alterius* (the expression of one thing is the exclusion of another), see *Detroit City Council v Detroit Mayor*, 283 Mich App 442, 456; 770 NW2d 117 (2009), defendant further argues that, because the Legislature expressly exempted GLWA from complying with other laws with respect to its design power, the Legislature did not intend to exempt GLWA from complying with other laws, including ordinances, when determining the location of its projects.

In response, GLWA offers arguments as to why the Legislature would not expressly exempt the power to determine project locations from other laws, yet still intend water and sewer authorities to be immune from local regulation. We find these arguments unpersuasive. GLWA first argues that the Legislature did not exempt its power to determine project locations from other laws because that power remains subject to the other provisions of the MSWSSA, and also the powers of the departments of public health and natural resources. Again, MCL 124.284(2)(e) provides that authorities may:

> (e) Determine the location of any project constructed by it under the provisions of this act, and to determine, in its discretion and *without reference to any other provision of this act* or any other law, the design, standards, and the materials of construction, and construct, maintain, repair, and operate the project. *However, the functions, powers, and duties of the state department of public health and the department of natural resources in connection with any such public improvements shall remain unaffected by this act.* [Emphasis added.]

Relying on the emphasized language, GLWA argues that its power to determine project locations is limited only by other provisions of the MSWSSA and the powers of the departments of health and natural resources. However, GLWA does not identify other provisions of the MSWSSA that would affect its location determinations. Nor does GLWA explain how the powers of the departments of public health and natural resources could affect those determinations. Further, contrary to GLWA's argument, the last sentence of MCL 124.284(2)(e) applies generally to all of the listed powers. In short, GLWA reads too much into the emphasized language by concluding that its power to determine project locations is exempt from all other laws not referenced by MCL 124.284(2)(e).

GLWA also argues that the purpose of the project is to maintain, repair, and operate an existing facility, i.e., the outfall sewer, which GLWA may do "without reference to any other provisions of this act or any other law." MCL 124.284(2)(e). While we agree with GLWA that

---

[7] The last-antecedent rule is "a rule of statutory construction that provides that a modifying or restrictive word or clause contained in a statute is confined solely to the immediately preceding clause or last antecedent, unless something in the statute requires a different interpretation." *Hardaway v Wayne Co*, 494 Mich 423, 427; 835 NW2d 336 (2013) (quotation marks and citation omitted).

the project is less about construction of a new facility, and more about maintenance of an existing one, the fact remains that GLWA is exercising its power to determine a project's location. Further, under the last-antecedent rule, "without reference to . . . any other law" would not apply to the last power listed in MCL 124.284(2)(e) regarding maintenance, repair, and operation.

Lastly, GLWA cites *Knauff v Oscoda Drain Comm'r*, 240 Mich App 485; 618 NW2d 1 (2000), for the proposition that the "without reference . . . to any other law" language in MCL 124.284(2)(e) also applies to GLWA's authority to determine project locations. In *Knauff*, the issue was whether a new sewer system could be constructed pursuant to the MSWSSA without regard to the Drain Code, MCL 280.1 *et seq*. *Knauff*, 240 Mich App at 489. This Court concluded that "the plain and unambiguous language of [MCL 124.284(2)(e)] allows defendants to construct a *new* sewer system in its county, not simply maintain or update an existing sewer system, without reference to any other law, particularly the Drain Code." *Id*. at 491. In reaching this conclusion, this Court plainly applied the "without reference . . . to any law" language to the statute's first clause, i.e., "[d]etermine the location of any project *constructed by it* under the provisions of this act." MCL 124.284(2)(e) (emphasis added). But *Knauff* did not concern the power to determine project location, and this Court's interpretation of the statute should not be read as resolving the immunity-from-zoning question when that issue was not before it. See *People v Seewald*, 499 Mich 111, 121 n 26; 879 NW2d 237 (2016) (explaining that to derive a rule law from the facts of a case "when the question was not raised and no legal ruling on it was rendered, is to build a syllogism upon a conjecture.").

To summarize, there is appeal to both parties' arguments on whether GLWA should be immune from local ordinances. GLWA's most persuasive argument rests on its statutory power to determine the location of its projects, which is similar to the language held in *Pittsfield* to exempt counties from township ordinances in determining where to site county buildings. However, the MSWSSA must be interpreted using its own terms, and, in MCL 124.284(2)(e), the Legislature expressly exempted water and sewer authorities from complying with "any other law" with respect to their design power. Because the Legislature knew how to expressly exempt authorities from other laws, it should be inferred that the Legislature did not intend to do so with respect to the power to determine project locations. At the very least, it cannot be said that there is a "clear expression" of Legislative intent to exempt water and sewer authorities from local regulation. *Dearden*, 403 Mich at 265. Further, while we do not view this as dispositive, it is notable that the Zoning Enabling Act, MCL 125.3101 *et seq*., excludes certain statutory acts from local zoning, and the MSWSSA is not one of them.[8] See MCL 125.3205(1); *Kyser v Kasson Twp*, 486 Mich 514, 560; 786 NW2d 543 (2010). For these reasons, we conclude that GLWA is not immune from local zoning ordinances.

---

[8] Although defendant did not rely on the Zoning Enabling Act before the trial court, "so long as the issue itself is not novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020).

## 3. DETROIT ZONING ORDINANCE

The next question is whether the proposed project would violate the Detroit zoning ordinance. Although the trial court did not reach this question, we may address alternative grounds for affirmance that were preserved in the trial court. *Middlebrooks v Wayne Co*, 446 Mich 151, 166 n 41; 521 NW2d 774 (1994).

A zoning ordinance is interpreted in accordance with the rules of statutory interpretation. *Brandon Charter Twp v Tippett*, 241 Mich App 417, 422; 616 NW2d 243 (2000). "When construing the provisions of a zoning ordinance, this Court seeks to discover and give effect to the legislative intent." *High v Cascade Hills Country Club*, 173 Mich App 622, 626; 434 NW2d 199 (1988). "A zoning ordinance must be construed reasonably with regard both to the objects sought to be attained and to the general structure of the ordinance as a whole." *Fass v Highland Park*, 320 Mich 182, 186; 30 NW2d 828 (1948).

GLWA argues, consistent with the guidance it received from the Detroit zoning manager, that the proposed project would constitute a basic utility, which the zoning ordinance defines, in relevant part, as:[9]

> Infrastructure services that need to be located in or near the area where the service is provided. Basic utilities uses generally do not regularly have employees at the site. Services may be public or privately provided.
>
> Examples include the following uses:
>
> - Electric transformer station;
> - Gas regulator station;
> - Residential-area utility facilities, public;
> - Solar generation station;
> - Telephone exchange building. [Detroit Ordinances § 50-16-422.]

GLWA further argues that basic utilities are permitted in R-2 zoning districts in accordance with Detroit Ordinance § 50-12-192:

> (2) In the R1, R2, R3, R4, R5, R6, residential PD, PR and SD1 Districts:
>
> a. Basic utilities shall be permitted only when operating requirements mandate that they be located within the district in order to serve the immediate vicinity[.]

---

[9] While defendant provided excerpts of the zoning ordinance, they are difficult to read. We instead referred to the municipal code website. Municode, *Code of Ordinances of the City of Detroit, Michigan* <https://library.municode.com/mi/detroit/codes/code_of_ordinances> (accessed January 10, 2024).

We agree with GLWA that the project meets the requirements of a basic utility. Maintenance and cleaning of the outfall sewer is a necessary part of the infrastructure service provided by the sewer system, and it is undisputed that the project needs to be located near the sewer line. The initial operations are expected to take up to two years, but it is estimated that sediment removal will only need to occur every 7 to 10 years. The project is similar to the listed examples because it serves as an intermediary facility for the larger sewer system, specifically the Baby Creek SDF. Defendant argues that the facility will not provide service to the cemetery, but is instead intended to address areawide problems. While the project will benefit the system as a whole, it remains true that the project must be located near the sewer line.

Defendant maintains that the project is more accurately characterized as a "waste-related use," which is defined by the ordinance as:

Uses that receive solid or liquid wastes from others for disposal on the site or for transfer to another location, uses that collect sanitary wastes, or uses that manufacture or produce goods or energy from the composting of organic material.

Examples include the following uses:

- Garbage, offal, or dead animal reduction;
- Hazardous waste facility;
- Incinerator plant;
- Radioactive waste handling;
- Recycling center;
- Rendering plant;
- Scrap tire processing or recycling facility;
- Scrap tire storage facility;
- Sewage disposal;
- Transfer station for garbage, refuse, or rubbish;
- Waste/scrap materials: indoor storage, handling, and/or transfer. [Detroit Ordinance § 50-16-461.]

Defendant argues that the second definition of waste-related use, "uses that collect sanitary waste," is applicable to the project. It seems clear that the sediment accumulation, or "sludge," contains sanitary waste. Indeed, part of the reason for the project is to avoid potential regrowth of bacteria that could result in violations of fecal standards. However, GLWA maintains that the purpose of the project is not to "collect" waste, but rather to remove it from the sewer line. Courts must not read language in isolation but rather must "construe its meaning in light of the context of its use." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich. 349, 367-368; 917 NW2d 603 (2018). Viewed in context, "collect[ing] sanitary waste" clearly refers to facilities that receive waste-related materials for transfer, processing, storage, disposal, or recycling. In this case, there is no such facility being constructed. Rather, GLWA will be accessing an existing sewer line to remove sediment and debris. For these reasons, we disagree with defendant that the project qualifies as a waste-related use.

Defendant also argues that the project constitutes a "major utility," which may not be located in R-2 districts. See Detroit Ordinance, § 50-12-51. The zoning ordinance defines "major utilities" as:

> Major, areawide infrastructure services that typically have employees at the site. Services may be public or privately provided.
>
> Examples include the following uses:
>
> - Water works, reservoir, pumping station, or filtration plant;
> - Power or heating plant with fuel storage on site;
> - Steam generating plant. [Detroit Ordinance § 50-16-422.]

The maintenance and cleaning of the outfall sewer will occur at one location, but it relates to areawide infrastructure services because the project benefits the combined sewer system as a whole. However, the project itself does not constitute a "major" service, such as a power plant. Further, the project will not typically have employees present. This type of project is plainly distinct from the listed "major utility" examples, which have full-time employees present. It is more similar to the listed examples for a basic utility because it is an intermediary facility for a larger system.

In sum, the project is permissible in the R-2 zoning district as a basic utility. The project does not qualify as either a waste-related use or a major utility. Accordingly, defendant's zoning challenge fails, and therefore defendant fails to identify an "error of law" underlying the determination of necessity. Because there is no identifiable error of law in the determination of necessity, whether or not GLWA could obtain a use variance is a moot issue that we need not address. See *Flynn v Ottawa Co Dep't of Pub Health*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359774); slip op at 5.

## B. ABUSE OF DISCRETION

Lastly, defendant argues that GLWA's determination of necessity constitutes an abuse of discretion. We affirm the trial court's ruling that the cemetery's southwest corner was a reasonable location for the project.

As noted, the party opposing condemnation bears the burden of proving an abuse of discretion by the condemning authority. *Hathcock*, 471 Mich at 466. Whether the underlying improvements are necessary is not subject to review. See *Twp of Gross Ile v Grosse Ile Bridge Co*, 477 Mich 890, 890-891 (2006). Accordingly, it must be assumed that the maintenance and cleaning of the outfall sewer is, in fact, necessary. The only question, therefore, is the necessity of acquiring an easement in the cemetery's southwest corner for this purpose.

The Supreme Court's decision in *Novi*, 473 Mich at 245, illustrates the deferential review afforded to a condemning agency's finding of necessity. In that case, the city condemned property to create a "ring road" to alleviate traffic congestion. *Id*. at 245. The Supreme Court held, in part, that the city's failure to consider alternative locations was not an abuse of discretion:

Here, defendants' objections to the necessity of taking their property for the proposed road are based on the assertion that the city never considered any alternatives and that reasonable alternative locations were available. Even if that were so, such facts would not remove the proposed road from the "principled range of outcomes." The city's decision-making process is not what we review; rather, we look at the resulting outcome. The city is not obligated to show that its plan is the best or only alternative, only that it is a reasonable one. [*Id*. at 254.]

The Court concluded: "Because defendants have not shown that the proposed route of the public road is outside the zone of reasonable alternatives, we find plaintiff did not abuse its discretion in determining that the taking of defendants' property is necessary for the ring road project." *Id*. at 255.

Defendant relies on *Nelson Drainage Dist v Filippis*, 174 Mich App 400; 436 NW2d 682 (1989),[10] for the propositions that (1) a court reviewing necessity may consider whether the project is "reasonably suited" for the property, *id*. at 404, and (2) economic considerations are not, by themselves, dispositive, *id*., at 406-407. Although *Filippis* was an "excess" taking case, we see nothing controversial about applying these principles in this case. It goes without saying that a reviewing court should take into account the relevant facts and circumstances of each case, and that no one factor should be deemed dispositive. See *State Highway Comm v Vanderkloot*, 392 Mich 159, 172-173, 177; 220 NW2d 416 (1974) (upholding the Highway Condemnation Act, MCL 213.361 *et seq*., against arguments that the "necessity" language in that act was an insufficient standard for agencies to exercise their discretion and for judicial review). In this case, we may consider the nature of the condemned property and the project's economic considerations because these were relevant factors considered by GLWA in making its necessity determination.

Defendant's argument focuses on the project's objectionable "smells, sights, and sounds," and their inconsistency with the peacefulness and tranquility commonly associated with a cemetery. Defendant relies on its retained industrial hygienist, Terracon Consultants, Inc., which performed an assessment of the project's noise, "noxious odors," and the "[d]iminishment of the overall integrity of the cemetery." If the adverse effects discussed in the Terracon report were equally applicable to the entire cemetery, or permanent instead of periodic, we may well agree with defendant that the proposed project location is outside the zone of reasonable alternatives. However, there are several mitigating factors to the adverse effects identified by defendant. First and foremost, it is undisputed that the project location is in the remotest part of the cemetery possible. The crane, trucks, and dumpsters necessary to the project will be confined to that area, and there will be a natural dilution of the project's noise and odors by the cemetery's size and trees. Masking agents will be utilized during sediment removal to help mitigate odors, and importantly, work within the easement will be suspended during funerals.

---

[10] While opinions issued by this Court before November 1, 1990, are not binding precedent, "they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

As noted, the project will isolate 39 gravesites located at the extreme southwest corner of the cemetery. These gravesites will be adjacent to the project and most affect by its operations. This is obviously highly undesirable for cemetery patrons visiting these gravesites. There will, however, be a respite when operations cease for funerals, and in the 7-to-10-year gaps between sediment removals. When operations are ongoing, patrons will be able to access these sites from one of the adjacent roads. When operations are not ongoing, patrons will be able to access the gravesites from anywhere in the cemetery, and GLWA has agreed to take steps to make the cemetery appear as it does today following the removal process

In evaluating the reasonableness of the site, the benefits of the project location must also be considered. Although it was not required to do so, *Novi*, 473 Mich at 245, GLWA considered nine alternative sites. The southwest cemetery location was chosen for multiple reasons, including the proximity to the highest sediment concentration (near the south of the outfall sewer), and the existing hatch access sites. Other sites were either unsuitable for the project's needs or required the construction of access conduits to the sewer, which would have been expensive and time-consuming. Several of the alternative sites presented other disadvantages, such as road closures. Further, many of the alternative sites were in close proximity to the cemetery, with four of the sites being listed as "adjacent to cemetery." Recall that the outfall sewer predominantly runs under the west edge of the cemetery, and therefore the cemetery would have likely experienced adverse effects, to one extent or another, regardless of the project's location.

The only alternative site discussed by defendant is the Patton Park location. This was the initial preferred location selected by a different consultant. However, the park is owned by the city of Detroit, which indicated that it was unwilling to grant an easement to GLWA because of restrictions related to state and federal grants. Whether GLWA could condemn property in Patton Park is an issue that has not been briefed by the parties. While there were advantages to this location, there were also drawbacks, including that it was a significant distance from the sediment buildup and would require construction of access structures.

In any event, GLWA was not "obligated to show that its plan is the best or only alternative, only that it is a reasonable one." *Novi*, 473 Mich at 245. Defendant has not contested or rebutted any of the reasons given in support of the chosen location, and it is clear that economic considerations were not the sole justification for GLWA's decision. Considering the totality of the circumstances, defendant has not carried its burden of establishing that the project location is outside the zone of reasonable alternatives.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Stephen L. Borrello
/s/ Douglas B. Shapiro

-15-